# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD J. ACKLEY,<br><br>        Plaintiff,<br><br>  v.<br><br>D. CARROLL, et al.,<br><br>        Defendants.<br>_____ / | CASE NO. 1:06-cv-00771-AWI-SMS PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 47, 50, 51)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

**I.   Procedural History**

Plaintiff Donald J. Ackley ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's complaint, filed June 19, 2006, against Defendants Carroll, Blevin, Uribe, and Wright for excessive force in violation of the Eighth Amendment, and Defendant Carroll for retaliation in violation of the First Amendment. (ECF No. 1.) On November 29, 2010, Defendants filed a motion for summary judgment. (ECF No. 47.) Plaintiff filed an opposition and a request to stay Defendants motion[1] and conduct additional discovery on December 22, 2010.[2] (ECF Nos. 50, 51.) Defendants filed a request for an extension of time to file a reply, which was granted, however no reply was filed.

---

[1] On May 17, 2011, an order was issued denying Plaintiff's motion to stay the motion and reopen discovery. (ECF No. 55.)

[2] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the second informational order filed February 4, 2009. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (ECF No. 13.)

## II.  Summary Judgment Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  However, the court is to liberally construe the filings and motions of pro se litigants.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010.)  The "party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323 (quoting Rule 56(c) of the Federal Rules of Civil Procedure).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record for consideration.  Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).  The Court will not undertake to mine the record for triable issues of fact.  Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010).

///
///
///

### III. Plaintiff's Allegations

After Defendant Carroll wrote a disciplinary report on Plaintiff that was dismissed on June 23, 2004, Defendant Carroll began to harass and intimidate Plaintiff. On October 12, 2004, Plaintiff filed an inmate appeal complaining about the harassment. After the appeal was filed, Defendant Carroll intensified the harassment of Plaintiff. On October 14, 2004, Defendant Carroll pushed Plaintiff against a wall, kicked him in the leg, and spit in his ear as he whispered that it was on between them, and if Plaintiff came up against him Plaintiff would lose. He also whispered that anything could happen to Plaintiff if he whispered the right words on the yard to another inmate. Additionally, Defendant Carroll allegedly had other correctional officers vigorously search Plaintiff's cell and write disciplinary reports on whatever grounds they could come up with. Plaintiff filed a second inmate appeal complaining about the harassment on October 14, 2004.

Plaintiff complains that Defendant Carroll had Plaintiff attacked by two inmates on October 17, 2004. During the attack Defendant Wright fired a XM-1006 exact impact round which struck Plaintiff in the face and right foot. Defendants Blevins and Uribe witnessed the inmate attack and failed to intervene to stop it so that Defendant Wright could fire the XM-1006 round at Plaintiff. If Defendants Blevins and Uribe had tried to stop the attack on Plaintiff they would have been in the line of fire and Plaintiff would not have been hit by the non-lethal round. Plaintiff was transferred by ambulance to an outside medical facility for treatment.

### IV. Undisputed Facts[3]

1. Plaintiff Donald Ackley is a state prisoner in the custody of the California Department of Corrections and Rehabilitation and was housed at California State Prison, Corcoran ("CSPC").

2. Defendant Carroll was the Metal Fabrication Floor Officer on duty during second watch at CSPC on October 12, 2004, and October 14, 2004.

3. Defendant Blevins was the Building 3C-05 Floor Officer on duty at CSPC during

---

[3] The Court compiled the statement of undisputed facts from Defendant's separate statement of facts, Plaintiff's declarations, and Plaintiff's complaint.

third watch on October 17, 2004. Defendant Blevins was on vacation relief and had been at CSPC for approximately one week.

4. Defendant Uribe was the Building 3C-05 Floor Officer on duty at CSPC during third watch on October 17, 2004.

5. Defendant Wright was the Building 3C-05 Control Booth Officer on duty at CSPC during third watch on October 17, 2004.

6. On October 17, 2004, Plaintiff was being attacked by two inmates and Defendant Wright fired his 40 mm launcher and the direct round impact struck Plaintiff.

## V.  Excessive Force

### A.  Defendants' Argument

On October 12, 2004, Defendant Carroll was working as the Metal Fabrication Floor Officer. (UF 2.) As he was patrolling the floor at approximately 12:40 p.m. Defendant Carroll observed Plaintiff concealing something in his left hand and asked Plaintiff to surrender the item to him. Plaintiff became evasive and after asking Plaintiff to surrender the item a second time, Defendant Carroll observed that it appeared to be tobacco and a small piece of paper in a clear plastic pouch. (Declaration of Carroll, ¶ 4.) Due to the nature of the item, Defendant Carroll contacted his supervisor who ordered that Plaintiff be returned to the program yard. (Id., ¶ 5.) On October 14, 2004, while Defendant Carroll was on duty, he again observed Plaintiff attempting to conceal something in his hand. (Id., ¶ 7.) When Plaintiff handed the item over, it was a note that said, "Don't you feel like your dog just pissed on your leg. Don't be a jackass." (Id., ¶ 7.) Due to similarities in content and handwriting, Defendant Carroll determined that this note was written by the same person that wrote another note found at his work station earlier that day that stated, "I wish I could be standing behind you when you picked this up Jackass." (Id., ¶ 8.)

Plaintiff was escorted to the staff office where he admitted to writing the notes and stated that Defendant Carroll had started this. Defendant Carroll took this to be a reference to the incident where he found Plaintiff in possession of contraband on October 12, 2004. (Id., ¶ 9.) Plaintiff was very angry; Defendant Carroll was concerned that he might become violent, so Defendant Carroll

4

1  ended the discussion. Because Defendant Carroll was concerned that Plaintiff would file a false rule
2  violation report accusing him and his partner of use of force, Defendant Carroll had Plaintiff taken
3  to the medical clinic for an injury report to document that there were no injuries. (Id., ¶ 10.)
4  Defendant Carroll does not remember if he conducted a pat down search of Plaintiff on this date.
5  (Id., ¶ 11.)

6  Defendant Carroll argues that he is entitled to summary judgment because during the October
7  14, 2004, incident Plaintiff alleges that Defendant Carroll pushed him against the wall, kicked his
8  leg, and spit as he whispered in Plaintiff's ear indicating that Defendant Carroll was conducting a
9  pat search of Plaintiff. While Defendant Carroll does not recall conducting a pat search of Plaintiff,
10 the description of the incident does not allege a Constitutional violation. Defendant Carroll had just
11 found Plaintiff to be in possession of an insulting message directed at Defendant Carroll. Two days
12 earlier Defendant Carroll had found Plaintiff with contraband. Plaintiff was visibly upset and acting
13 disrespectfully toward Defendant Carroll. Defendant Carroll was permitted to use some force to
14 restore discipline or perform a pat down search.

15 Plaintiff's allegations that Defendant Carroll pushed him in a threatening manner and spit
16 in his ear are the types of actions the Supreme Court has stated do not constitute excessive force
17 when there is no injury. The accusation that Defendant Carroll kicked Plaintiff's leg is not a
18 constitutional violation when viewed in context. Defendant Carroll has stated that it is his custom
19 when conducting a pat down search to tap the inmate's leg with his own leg if he wanted the inmate
20 to spread his legs further apart. Keeping the inmate's legs apart is important to ensure officer safety.
21 The alleged kick was intended to maintain officer safety and did not constitute excessive force.

22 Plaintiff's allegation regarding October 17, 2004, must fail as a matter of law. Defendant
23 Carroll did not use force on Plaintiff and was not present at the time of the incident. Although
24 Plaintiff alleges that Defendant Carroll used excessive force by convincing the two inmates to attack
25 him, there is no evidence that Defendant Carroll orchestrated the attack. Plaintiff attempts to link
26 the attack to the alleged threats made earlier, but absent evidence connecting Defendant Carroll to
27 the attack, threats alone are insufficient to state a claim of excessive force.
28

1    Defendants Blevins and Uribe move for summary judgment. Defendants Blevins and Uribe
2 were working as Floor Officers on the third watch on October 17, 2004. (Undisputed Fact 3, 4.) At
3 approximately 7:35 p.m. Defendant Uribe noticed two inmates attacking a third inmate. (Declaration
4 of D. Uribe, ¶ 4.) Upon observing the fight, Defendant Uribe withdrew his baton and yelled to the
5 inmates to get down on the floor. (Id., ¶ 5.) Defendant Uribe began moving cautiously toward the
6 fighting inmates because he knew that the control officer might fire a non-lethal weapon, and he did
7 not want to obstruct the line of fire or be hit by the round. (Id., ¶ 6.) While Defendant Uribe does
8 not remember if he hit his personal alarm, he does remember that an alarm was activated. (Id. ¶ 7.)
9 Defendant Uribe observed two inmates striking Plaintiff in the face while he tried to defend himself.
10 (Id., ¶ 8.) After less than ten seconds, Defendant Uribe heard the control booth fire a non-lethal
11 round from his 40 mm launcher. (Id., ¶ 9.) Immediately after the round was fired the inmates
12 stopped fighting, and Plaintiff crawled away from his attackers. (Id., ¶¶ 10, 11.)

13    At approximately 7:35 p.m., Defendant Blevins, who had been working at CSPC for one
14 week, observed three inmates fighting on the stairwell and withdrew his pepper spray and activated
15 his personal alarm. (Declaration of Blevins, ¶¶ 4, 5, 12.) All the inmates, except the three that were
16 fighting, got down on the floor. (Id., ¶ 5.) As Defendant Blevins moved toward the inmates that
17 were fighting he was unable to tell who the aggressors were. All three of the inmates appeared to
18 be fighting and he was intending to spray all of them with his pepper spray when he got close
19 enough. (Id., ¶ 6.) After approximately ten seconds, Defendant Blevins heard the control booth
20 officer fire a non-lethal round from his 40 mm launcher, and the three inmates immediately stopped
21 fighting. (Id., ¶ 7, 8.) Defendants Blevins and Uribe argue that they did not use any physical force
22 against Plaintiff so they are entitled to judgment as a matter of law and their motion for summary
23 judgment should be granted.[4]

---

[4] Pursuant to 28 U.S.C. § 1915A(a) the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. The prior Magistrate Judge screened the complaint and found that Plaintiff stated a claim against Defendants Blevins and Uribe for excessive force. Defendants argue in their motion that the claim is more appropriately a failure to protect claim. The Court has re-screened the complaint and finds that Plaintiff has stated a claim against Blevins and Uribe for failure to protect and will analyze Defendants arguments set forth in their motion for summary judgment.

1    Plaintiff's claims that Defendants Blevins and Uribe failed to protect him from Defendant
2 Wright must fail because Defendants acted reasonably given the totality of the circumstances
3 confronting them. To the extent that Plaintiff alleges that Defendant Blevins and Uribe made a
4 conscious decision not to obstruct the line of fire between Defendant Wright and the fighting inmates,
5 the law contradicts his position. Plaintiff is not entitled to second guess the method used by officers
6 to restore discipline. The question is whether it was a good faith effort to restore discipline.
7 Defendants Blevins and Uribe did not interfere with the line of fire so that the 40 mm launcher could
8 be used to restore discipline. Since Defendants Blevins and Uribe were not acting with a malicious
9 intent to cause Plaintiff harm, they are entitled to summary judgment.

10    Defendant Wright is entitled to summary judgment because he did not act maliciously and
11 sadistically to cause harm, but rather for the purpose of restoring discipline. Defendant Wright was
12 working as the Control Booth Officer on October 17, 2004. (UF 5.) At approximately 7:35 p.m.,
13 Defendant Wright noticed three inmates fighting on the stairwell. The control booth is elevated
14 allowing Defendant Wright to look down on the dayroom floor. (Declaration of Wright, ¶ 4.) Upon
15 observing the fight, Defendant Wright yelled to the inmates to get down on the floor. All of the
16 inmates in the dayroom got down, except the three that were fighting. (Id., ¶ 5.) Two of the inmates
17 were striking Plaintiff in the head, side of the face, and back. Plaintiff was swinging his fists at
18 inmate Colby in an attempt to defend himself. (Id., ¶ 6.) Defendant Wright was armed with a 40 mm
19 less-than-lethal weapon. Since the inmates did not stop fighting when ordered to get down,
20 Defendant Wright determined that the weapon was the appropriate response to end the fight.
21 Defendant Wright aimed the weapon at inmate Colby's legs and fired one round. (Id., ¶ 7.) The
22 round missed the intended target and struck Plaintiff in the ankle. (Id., ¶ 8.) As soon as Defendant
23 Wright fired the weapon, the three inmates stopped fighting and fell to the ground. The incident
24 lasted approximately ten seconds. (Id., ¶ 9.)

25    The force used by Defendant Wright was done in a good faith effort to maintain safety and
26 security. Although Plaintiff alleges that the round fired by Defendant Wright struck him in the face,
27 he offers no evidence that his facial injuries were caused by Defendant Wright rather than by the
28

7

inmates who were repeatedly striking him in the face. Additionally, Defendant Wright's use of force was reasonable and the least amount of force available to him in the circumstances. Defendant Wright waited to fire until other attempts to stop the altercation had failed. The action was necessary as the three inmates were continuing to fight, the officers' attempts to stop the altercation had been unsuccessful, and intervention was needed before one of the inmates was seriously injured or a riot occurred.

### B.     Plaintiff's Argument

Plaintiff argues that Defendants' version of the events of October 17, 2004, are not true. Since he was not prepared for Defendants to lie about what occurred, he requests a stay of the motion so he can conduct additional discovery to obtain the deposition of additional inmates, and requests the court appoint a medical expert to explain to the court how his eyeball was knocked out of his skull. (Declaration of Plaintiff, ¶ 3, ECF No. 50.)

Defendants Carroll, Wright, Uribe, and Blevins are African American and Plaintiff is a Caucasian male with visible tattoos, including swastika art. Defendant Carroll made it clear that he is racially biased against Plaintiff.[5] This is the reason Plaintiff was unprepared for Defendants' denial. (Id., ¶ 4.) Defendant Carroll's hatred of Plaintiff caused him to focus extra attention on Plaintiff, searching him more than African American inmates, etc. The racial discrimination evolved into Defendant Carroll writing Plaintiff up for false rule violations so Plaintiff would lose his prison job. (Id., ¶ 5.) When Plaintiff prevailed on the rule violation, Plaintiff returned to his job assignment and began to gloat over his victory. Other inmates praised him for defeating Defendant Carroll at his own game. This caused Defendant Carroll to become angry and begin an all-out campaign to harm Plaintiff. (Id., ¶ 6.)

Defendant Carroll pretended to search Plaintiff and forced him into a wall, kicked his feet apart, and whispered threats to Plaintiff, such as "it's on between us now; I can have some inmates

---

[5] Plaintiff appears to attempt to expand his claims against the named defendants to include conspiracies and equal protection claims. However, Plaintiff may not now expand the scope of this litigation via his opposition to Defendants' motion for summary judgment. See Gilmore v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004). Plaintiff's claims are confined to those screened and found cognizable by the Court. (ECF No. 11.)

8

attack you; I can have your cell tossed; I will make your life miserable." (Id., ¶ 7.) Plaintiff's cell was searched by other guards in a way that his personal property was destroyed while no other inmate's cell was searched that day. The next day Defendant Carroll was gloating about it. (Id., ¶ 8.)

Plaintiff filed an inmate grievance against Defendant Carroll because of the cell search. (Id., ¶ 9.) On October 17, 2004, Plaintiff was attacked by two inmates for no reason. Inmates know when they have violated the "prisoner's code" to the extent that they will be attacked by other inmates, and Plaintiff did nothing to warrant such an attack. Therefore, Defendant Carroll did or said something to the inmates to make them attack Plaintiff. (Id., ¶ 10.)

Plaintiff alleges that Defendant Wright shot him in the face with the 40 mm launcher long after the attack was over and he was away from the two attacking inmates. It was not accidental, but an intentional act that knocked his eyeball out of the socket. There was no fight going on when the shot was fired. (Id., ¶ 17.)

**C.    Legal Standard**

When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citing Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). In determining whether the use of force was wanton and unnecessary, it is proper to consider factors such as the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. Hudson, 503 U.S. at 7.

A prison official's use of force to maliciously and sadistically cause harm violates the contemporary standards of decency. Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010). However, "[n]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action." Gaddy, 130 S. Ct. at 1179 (quoting Hudson, 503 U.S. at 9). Factors that can be considered are "the need for the application of force, the relationship between the need and the amount of force that was used, [and]

9

the extent of injury inflicted." Whitley, 475 U.S. at 321; Marquez v. Gutierrez, 322 F.3d 689, 692 (9th Cir. 2003). Although the extent of the injury is relevant, the inmate does not need to sustain serious injury. Hudson, 503 U.S. at 7; Wilkins, 130 S. Ct. at 1178-79. The Eighth Amendment's prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition de minimus uses of physical force. Hudson, 503 U.S. at 9-10.

**D.    Discussion**

The Court finds that Defendants have met their initial burden of informing the Court of the basis for their motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus., 475 U.S. at 586 (1986).

**1.    Defendants Blevins and Uribe**

Plaintiff contends that Defendants Blevins and Uribe intentionally failed to intervene to stop the attack so that Defendant Wright could shoot him with a non lethal weapon. Although the Court accepts all of Plaintiff's factual allegations as true, he must do more than simply state that the defendants acted with improper motive to survive summary judgment. Jeffers v. Gomez, 267 F.3d 895, 907 (9th Cir. 2001). "He must 'put forward specific, nonconclusory factual allegations that establish improper motive.'" Id. (citations omitted.) Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff has not alleged that Defendants Blevins or Uribe used any force against him during this incident.

Plaintiff is attempting to hold Defendants Blevins and Uribe liable for the force used by Defendant Wright. However, Plaintiff has not set forth any specific, nonconclusory factual allegations to establish that Defendants acted with an improper motive, Jeffers, 267 F.3d at 907, and has not linked the actions of these defendants to any improper response by any other defendant. Since Plaintiff has failed to establish facts from which any trier of fact could find that Defendants Blevins and Uribe used excessive force, there is no genuine issue as to any material fact. Henderson v. City

of Simi Valley, 305 F.3d 1052, 1061 (9th Cir. 2002). Accordingly Defendants Blevins and Uribe are entitled to summary judgment on Plaintiff's claims of excessive force.

### 2. Defendant Wright

The Court is to consider the need for application of force compared to the amount of force used. Hudson, 503 U.S. at 7. Defendant Wright states that he ordered the inmates to get down, and all inmates except Plaintiff and the other two inmates involved in the fight complied. Since the three inmates failed to comply and continued to fight, he fired his non-lethal weapon. However, Plaintiff alleges that Defendant Wright did not fire his non-lethal weapon until long after the fight was over and Plaintiff was away from the other two inmates. Viewing the facts in the light most favorable to Plaintiff, Defendant Wright fired his weapon after the fight was over and Plaintiff was away from the two other inmates. According to Plaintiff the inmates had complied and stopped fighting prior to the shot being fired. This is sufficient to raise a genuine issue of material fact as to whether there was a need for force and if the amount of force used was appropriate.

Since the timing of when Defendant Wright fired his weapon is relevant to determine if his use of force was excessive, there is a genuine issue of material fact as to Defendant Wright's use of force and Defendant Wright's motion for summary judgment shall be denied.

### 3. Defendant Carroll

Plaintiff alleges that on October 14, 2004, Defendant Carroll conducted a pat search of him. During the pat search Plaintiff was pushed against a wall, his leg was kicked apart, and Defendant Carroll whispered to him threats such as "it's on between us now; I can have some inmates attack you; I can have your cell tossed; I will make your life miserable." (Plaintiff's Declaration, ¶ 7.) While Defendant Carroll does not remember if he conducted a pat search of Plaintiff, he did find Plaintiff to be in possession of a note directed at Defendant Carroll. He had found a similar note in his work station earlier in the day and recognized that both notes were written by the same person. Defendant Carroll had found contraband on Plaintiff two days prior. After the incident, Plaintiff was taken to medical to be evaluated and stated that it was "[j]ust an argument with [a] staff member. I'm not upset or angry at him. Well, I'm just amused." (Declaration of Carroll, ¶ 14.)

11

1 The force Plaintiff describes used during the pat down search, pushing him against the wall
2 and kicking his leg was de minimis. The force described is not the sort of force "repugnant to the
3 conscious of mankind" and does not violate the cruel and unusual punishment clause of the Eighth
4 Amendment. Hudson, 503 U.S. at 9; see DeWalt v. Carter, 224 F.3d 607, 619-20 (7th Cir. 2000)
5 (shoving inmate into door frame causing bruising on his back is de minimis use of force); Jones v.
6 City of Dothan, Ala., 121 F.3d 1456, 1461 (11th Cir. 1997) (shoving suspect against wall, kicking
7 his legs apart, and having him raise his hands above his head during pat down search is minor use of
8 force); Moore v. Machado, No. C07-0284 SBA (PR), 2009 WL 4051082, *5 (N.D. Cal. Nov. 20,
9 2009) (throwing inmate against wall and twisting his left arm is de minimis use of force that does not
10 rise to a constitutional violation).

11 While Plaintiff alleges that during the search Defendant Carroll threatened him, verbal
12 harassment does not constitute a violation of the Eighth Amendment. Keenan v. Hall, 83 F.3d 1083,
13 1092 (9th Cir. 1996); Oltarzewski v. Ruggiero, 830 F.2d 136, 138 (9th Cir. 1987). Nor do threats rise
14 to the level of a constitutional violation. Gaut v. Sunn, 810 F.2d 923, 925 (9th 1987).

15 Defendant Carroll was not present during the incident that occurred on October 17, 2004, and
16 although Plaintiff alleges that Defendant Carroll instigated the assault, he has provided no evidence
17 to indicate that Defendant Carroll was involved in the incident. Plaintiff's argument that since he did
18 not violate the "prison code" Defendant Carroll must have arranged for the two inmates to attack him
19 is insufficient to establish a triable issue of fact. Plaintiff cannot successfully oppose Defendant's
20 motion for summary judgment with mere suspicions and undocumented arguments. S.A. Empresa
21 De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde Co., Inc., 690 F.2d 1235, 1238 (9th
22 Cir. 1982). Defendant Carroll is entitled to summary judgment on Plaintiff's excessive force claims.

23
24 ///
25 ///
26 ///
27 **VI.    Failure to Protect**
28

Plaintiff alleges that Defendants Blevins and Uribe failed to intervene to stop the two inmates from attacking him. Prison officials are required "to take reasonable steps to protect inmates from physical abuse." Hoptowit v. Ray, 682 F.2d 1237, 1250 (9th Cir. 1982) (abrogated on other grounds by Sandin v. O'Connor, 515 U.S. 472 (1995)). To prove a violation of the Eighth Amendment the plaintiff must "objectively show that he was deprived of something 'sufficiently serious,' and make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (citations omitted). Deliberate indifference requires a showing that "prison officials were aware of a "substantial risk of serious harm" to an inmates health or safety and that there was no "reasonable justification for the deprivation, in spite of that risk." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837, 844 (1994)).

Plaintiff does not allege that Defendants Blevins or Uribe were aware of any risk of harm to Plaintiff prior to seeing the fight in progress. Plaintiff's claim is not that Defendants failed to prevent the attack from occurring, but that Defendants Blevins and Uribe failed to act to break up the fight once it had begun. However, he has presented no evidence that Defendants Blevins and Uribe failed to act. The attack on Plaintiff lasted approximately ten seconds. During that time period Defendant Uribe withdrew his baton and Defendant Blevins withdrew his pepper spray. Defendant Uribe yelled for the inmates to get down on the ground and Defendant Blevins sounded his personal alarm. Both Defendants began moving toward the three inmates that were fighting.

Plaintiff has failed to show that Defendants Blevins or Uribe acted with a sufficiently culpable state of mind for a trier of fact to find they were deliberately indifferent to Plaintiff during the attack. Thomas, 611 F.3d at 1150. Plaintiff's statements that Defendants lied in their declarations, without the submission of evidence that would refute Defendants version of the events, is insufficient to create a triable issue of material fact.

Additionally, Plaintiff argues that had Defendants responded to the fight they would have been in the line of fire and he would not have been hit when Defendant Wright fired the weapon. Defendant Uribe states that he was moving cautiously toward the fighting inmates because he did not want to obstruct the line of fire of the control booth officer. He was aware that the 40 mm launcher

was the appropriate tool for quelling inmate fights and did not want to prevent its potential use. (Declaration of Uribe, ¶ 6.) Defendants Blevins and Uribe presented evidence that they avoided interfering with the line of fire because the 40 mm launcher was the instrument that would best be used to break up the inmate fight when the inmates failed to respond to verbal requests. Again Plaintiff has not set forth any specific, nonconclusory factual allegations to establish that Defendants acted with an improper motive. Jeffers, 267 F.3d at 907, and Defendants Blevins and Uribe are entitled to summary judgment on Plaintiff's claims that they failed to protect him.

**VII.    Retaliation**

Defendant Carroll argues that Plaintiff cannot prevail on his claim that Defendant Carroll retaliated against him because Defendant Carroll was not aware that Plaintiff had filed any grievances against him. Plaintiff's grievances were filed on October 12 and 14, 2004, and the attack occurred on October 17, 2004. Defendant Carroll was not aware of the appeals until long after the attack occurred. Plaintiff may not bring his claim for retaliation based upon the dismissed rule violation report because no protected conduct is involved in defending a rule violation report. Additionally, Defendant Carroll was not aware of the rule violation report or that it had been dismissed until after Plaintiff filed this lawsuit. Defendant Carroll is therefore entitled to summary judgment.

Plaintiff argues that Defendant Carroll retaliated against him for gloating over having the rule violation dismissed by having his cell searched and his property destroyed, causing inmates to attack him, and causing Defendant Wright to seek the opportunity to shoot Plaintiff during the attack.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). A viable claim of retaliation in violation of the First Amendment consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonable advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); accord Brodheim v. Cry, 584 F.3d

1262, 1269 (9th Cir. 2009).

A plaintiff asserting a retaliation claim must demonstrate a "but-for" causal nexus between the alleged retaliation and Plaintiff's protected activity (i.e., filing a legal action). McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979); see Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977). The prisoner must submit evidence, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the allegedly retaliatory action. Pratt, 65 F.3d at 806. Timing of the events surrounding the alleged retaliation may constitute circumstantial evidence of retaliatory intent. See Pratt 65 F.3d at 808; Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1316 (9th Cir. 1989).

The Court finds that Defendant has met his initial burden of informing the Court of the basis for his motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus., 475 U.S. at 586 (1986).

Plaintiff alleges that he was retaliated against for prevailing at a rule violation hearing. A prisoner retains those First Amendment rights that are not inconsistent with his status as a prisoner or the legitimate penological objectives of the institution. Rhodes, 408 F.3d at 567. A prisoner's First Amendment rights include the right to file prison grievances and the right to petition the court. Id. However, the Court finds no authority, and Plaintiff fails to set forth authority, to establish that he engaged in any protected activity by contesting the rule violation. Therefore Plaintiff's claims alleging any acts which occurred prior to filing his grievance on October 12, 2004, fail as a matter of law.

Defendant Carroll denies orchestrating any attack on Plaintiff or threatening to have Plaintiff attacked. Although Defendant Carroll is familiar with the officers involved in the October 17, 2004, incident he did not have any non-job related conversations with the officers on or before October 17, 2004. Plaintiff claims that Defendant Carroll must have had the two inmates attack him on October 17, 2004, because he did not violate the "prisoner's code," and the only reason he would have been

attacked is if Defendant Carroll had done or said something to the inmates to cause them to attack him. Additionally, Plaintiff alleges that Defendant Carroll had his cell searched by other correctional officers who damaged his property. He claims that because his cell was the only cell searched after Defendant Carroll made the statement that he could have Plaintiff's cell searched, a jury could find that the search was initiated by Defendant Carroll. Plaintiff offers only conclusory statements that Defendant Carroll must have been involved in setting up these incidents without any supporting facts to establish a link between Defendant Carroll and the alleged retaliatory acts. Pratt, 65 F.3d at 806. This is insufficient to establish a triable issue that Defendant Carroll instigated these events.

Plaintiff filed an inmate appeal on October 12, 2004. Plaintiff alleges that on October, 14 2004, Defendant Carroll aggressively pat searched him, threatened him, and filed a false rules violation report in retaliation for his filing the inmate appeal. Defendant Carroll asserts that he was not aware that Plaintiff filed a grievance against him until November 17, 2004, when he was interviewed regarding the claim. However, in his complaint Plaintiff alleges that on October 14, 2004, he told Defendant Carroll that he had filed a complaint about his misconduct prior to being pushed into the wall, searched, threatened, and the false rule violation report being submitted.[6] (Compl. 18, ECF No. 1.) This is sufficient, when viewed in the light most favorable to Plaintiff, to raise a genuine issue as to Defendant Carroll's intent. Brodheim, 584 F.3d at 1271. The conduct alleged would be sufficient to chill a person of ordinary firmness in the exercise of his First Amendment rights. Id. Defendants' motion for summary judgment shall be denied for this incident.

**VIII. Qualified Immunity**

Defendants Blevins, Uribe, and Wright argue that they are all entitled to qualified immunity. There is no need to consider the defense of qualified immunity with respect to the claims that the Court has resolved in Defendants favor on summary judgment. Wilkie v. Robbins, 551 U.S. 537, 567 (2007).

Defendant Wright argues he would be entitled to qualified immunity because a reasonable

---

[6] A verified complaint may be used as an affidavit in opposition to a motion for summary judgment. Schroder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995).

16

officer in his position would not believe that his conduct would violate any clearly established law. Defendant Wright only fired his weapon with the intent of stopping the fight, he was aiming at inmate Colby's leg and inadvertently struck Plaintiff. A reasonable officer in Defendant Wright's position would believe that firing a non lethal weapon at an inmate who is attacking another inmate, for the purpose of stopping the attack, would restore discipline and protect the security of the inmates and the prison. A reasonable officer would believe that he was provided with the 40 mm launcher so it could used in this exact situation and no case has ever held that such use violates the Eighth Amendment. Plaintiff has not alleged that Defendant Wright intended to hit him in the eye. The evidence shows that Defendant Wright aimed his weapon at inmate Colby's leg and whether he hit Plaintiff in the leg or eye is irrelevant to the issue of qualified immunity.

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine if an official is entitled to qualified immunity the court uses a two part inquiry. Saucier v. Katz, 533 U.S. 194, 200 (2001). The court determines if the facts as alleged state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful. Saucier, 533 U.S. at 200. A district court is "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S. Ct. at 818. The inquiry as to whether the right was clearly established is "solely a question of law for the judge." Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting Tortu v. Las Vegas Metro. Police Dep't. 556 F.3d 1075, 1085 (9th Cir. 2009)).

As discussed, viewing the facts as alleged in the light most favorable to Plaintiff, Defendant Wright's conduct violated a constitutional right. Accordingly, the first prong of the qualified immunity inquiry set forth in Saucier has been met. Saucier, 533 U.S. at 201. Turning to the second prong, the Court must determine whether the right was clearly established. Id. The right a plaintiff

alleges has been "violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." Dunn, 621 F.3d at 1201 (quoting Wilson v. Layne, 526 U.S. 603, 615 (1999)).

Defendant argues that he is entitled to qualified immunity because he could not have known that firing the 40 mm launcher in an attempt to restore discipline and protect the security of inmates and the prison would violate the Eighth Amendment.  While Defendant argues that it is not clearly established that he violated Plaintiff's rights by firing the 40 mm launcher to break up an inmate fight, Plaintiff contends that Defendant Wright fired the 40 mm launcher long after the fight was over and he was way from the other two inmates.  It is clearly established that it would violate Plaintiff's rights to shot him long after the fight had finished and while all inmates were complying with the officers' orders.  Since there is a factual dispute as to whether the fight between inmates was still occurring at the time that Defendant Wright fired the 40 mm launcher it cannot be said, as a matter of law, that Defendant Wright's actions were entitled to qualified immunity.  Martinez v. Stanford, 323 F.3d 1178, 1185 (9th Cir. 2003).  Accordingly, Defendant Wright is not entitled to qualified immunity on Plaintiff's claims and his motion for summary judgment on that basis should be denied.

## IX. Plaintiff's Motion for Expert Witness

Plaintiff seeks the appointment of an expert witness to help him present his case.  The Court has the discretion to appoint an expert and to apportion costs, including the apportionment of costs to one side.  Fed. R. Evid. 706; Ford ex rel. Ford v. Long Beach Unified School Dist., 291 F.3d 1086, 1090 (9th Cir. 2002); Walker v. American Home Shield Long Term Disability Plan, 180 F.3d 1065, 1071 (9th Cir. 1999).

In this case, the Court requires no special assistance in deciding the issues.  Ford ex rel. Ford, 291 F.3d at 1090; Walker, 180 F.3d at 1071.  Further, where, as here, the cost would likely be apportioned to the government, the Court should exercise caution.  The Court has a burgeoning docket of civil rights cases filed by prisoners proceeding pro se and in forma pauperis.  The facts of this case are no more extraordinary and the legal issues involved no more complex than those found in the majority of the cases now pending before the Court.  Accordingly, Plaintiff's request for the

appointment of an expert witness should be denied.

## X. Conclusion and Recommendation

Accordingly, the Court finds that Defendants Blevins and Uribe are entitled to summary judgment on Plaintiff's claims against them. However, Plaintiff established a triable issue of fact as to his claim of excessive force against Defendant Wright and retaliation against Defendant Carroll for the incident occurring on October 14, 2004, such that Defendants Wright and Carroll are not entitled to summary judgment either on the merits of Plaintiff's claim against them or qualified immunity.

Accordingly, based on the foregoing analysis, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary adjudication as to Plaintiff's claims against Defendant Blevins be GRANTED;

2. Defendants' motion for summary adjudication as to Plaintiff's claims against Defendant Uribe be GRANTED;

3. Defendants' motion for summary adjudication as to Plaintiff's excessive force claims against Defendant Carroll be GRANTED;

4. Defendants' motion for summary adjudication as to Plaintiff's retaliation claims against Defendant Carroll:

    a. Arising out of the incidents on October 14, 2007, be DENIED; and

    b. Arising out of all remaining incidents be GRANTED;

5. Defendants' motion for summary adjudication as to Plaintiff's excessive force claims against Defendant Wright be DENIED;

6. Defendants' motion for summary adjudication on the ground of qualified immunity for Defendant Wright be DENIED; and

7. Plaintiff's motion for appointment of an expert witness should be DENIED.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with

the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   June 1, 2011**                          **/s/ Sandra M. Snyder**
                                                                     UNITED STATES MAGISTRATE JUDGE